# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. GARY, | 1:09-cv-02161-DLB (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND CERTIFICATE OF APPEALABILITY IS NOT NECESSARY |
| v. | |
| FEDERAL BUREAU OF PRISONS, | [Doc. 1] |
| Respondent. | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. (Court Docs. 4, 6.)

BACKGROUND

Petitioner is a federal prisoner serving a 141 month aggregate sentence. Petitioner's sentence is comprised of several smaller sentences, including a 12 month sentence imposed on November 19, 2002, by the Western District of Missouri, for violation of supervised release (the original sentence, for Escape from Federal Custody, in violation of 18 U.S.C. § 751(a), was imposed on February 22, 1999); a 105 months sentence, also imposed on November 19, 2002, by the Western District of Missouri, for Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (date of offense November 15, 2001); and a 24 month sentence imposed by the Eastern District of Kentucky on August 22, 2005, for Possession of Methamphetamine by a Federal Inmate, in violation of 18 U.S.C. § 1791(a)(2) (date of offense January 24, 2004). See

Answer, Attachment 1, Judgment & Commitment Orders; see also, Attachment 2, Public Information Inmate Data. At the time of the challenged incident report, Petitioner was housed at the United States Penitentiary in Lee County (USP Lee), Virginia. Petitioner is currently housed at the United States Penitentiary in Atwater (USP Atwater), California. Petitioner's projected release date is November 14, 2010-via good conduct time release.

In the instant petition, Petitioner challenges the sanctions he received for three different prison rule violations. He claims he was denied due process and the hearing officer was not authorized to forfeit Non-Vested Good Conduct Time as a sanction.

## DISCUSSION

I.   Subject Matter Jurisdiction and Venue

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Whether the Court has subject matter to hear Petitioner's claims pursuant to 28 U.S.C. § 2241 will be discussed below. In addition, pursuant to § 2241, venue is proper in this case because Petitioner was confined at the United States Penitentiary in Atwater, California, at the time he filed the instant petition. Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir.2000).

II.  Exhaustion of Administrative Remedies

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id. If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty

exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims. See Francis v. Rison, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. See Francis, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq.  First, an inmate must attempt to resolve the issue informally by presenting it to staff before submitting a Request for Administrative Remedy. 28 C.F.R. § 542.13 (1999). If dissatisfied with the response, the prisoner may proceed with the formal filing of an Administrative Remedy Request. 28 C.F.R. § 542.14 (1999). Upon denial by the institution, the prisoner may appeal the decision by filing a complaint with the Regional Director of the Bureau of Prisons. 28 C.F.R. § 542.15 (1999). The Regional Director's decision may be appealed to the General Counsel in Washington, D.C. Id. Appeal to the General Counsel is the final step in the administrative remedy process. Id.

With regard to incident report 1619034, Petitioner submitted an appeal to the Regional Director on August 9, 2007. However, it was rejected because Petitioner did not submit three copies of his continuation page. He was advised he must resubmit his appeal within ten days. Petitioner failed to do so. However, Petitioner did submit an administrative appeal to the Warden at USP Atwater challenging both incident reports 1619034 and 1647130, which was denied on January 25, 2010. See Amendment to Original Petition, at 3-5. Petitioner did not

appeal this decision.  See Answer, Attachment 3, Declaration of Jennifer Vickers.  Therefore, Petitioner has not exhausted his administrative remedies with respect to these incident reports.

With regard to incident report 1793099, Petitioner filed a Regional Administrative Remedy Appeal with the Mid-Atlantic Regional Office, on February 18, 2009.  Id., see also Attachment 4, Administrative Remedy Appeal 531143-R1; Petition at 11.  The Regional Director responded to Petitioner's appeal on May 6, 2009.  Id., see also Petition at 10.  On June 2, 2009, the BOP's central officer received a Central Officer Administrative Appeal.  Id., see also Petition at 5-9.  On June 18, 2009, the appeal was rejected because Petitioner exceeded the allowable continuation page limit.  Id., see also, Petition at 4.  Petitioner was instructed that he could re-file the appeal within fifteen days, but he failed to do so.  Accordingly, Petitioner has not exhausted the administrative remedies with respect to this claim as well.  Notwithstanding Petitioner's failure to exhaust, for the reasons explained below, his claims fail on the merits.

IV.     Applicable Law

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported by "some evidence."  Hill, 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).  The "some

evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Hill, 472 U.S. at 455-456; see also Barnsworth v. Gunderson, 179 F.3d 771, 779 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Hill, 472 U.S. at 455; Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

V.     Analysis of Petition

   A.     Incident Report 161903

On July 11, 2007, Officer D. Compton, Special Investigative Tech., wrote an incident report charging Petitioner with a violation of Code 197, Use of the Telephone to Further Criminal Activity, and Code 203, Threatening Another With Bodily Harm or Any Other Offense. See Attachment 5, DHO File 1619034 at 5.

On July 12, 2007, the Unit Disciplinary Committee (UDC) conducted a hearing and referred the incident report to be heard by the Discipline Hearing Officer (DHO). Id. at 10. Petitioner signed the form indicating that he had been advised of his rights, and he did not request a Staff Representative or to call witnesses. Id. at 11.

The DHO held a hearing on July 19, 2007. Petitioner did not submit any documentary evidence, but he made the following statement: "I said what I said. I'm not denying it. I was mad. I called her three times since. I made the threat." Id. After considering all of the evidence, including Petitioner's statements and the information set forth in the incident report, Petitioner was expunged of the Code 197 charge, but was found guilty of violating Code 203. Id. at 3.

As a consequence, Petitioner lost five years of telephone privileges, visiting privileges for one year, and his property was impounded for 30 days. Id. Petitioner was also placed in disciplinary segregation for 30 days. Petitioner also lost 27 days of Good Conduct Time (GCT), and forfeited 60 days of Non-vested Good Conduct Time (NVGCT). Id. As of November 14, 2006, Petitioner had 203 days of NVGCT available to forfeit. See Answer, Attachment 6, Sentence Monitoring Good Time Data.

5

As to this incident report, Petitioner was afforded each of the procedural due process requirements set forth in Wolff. Petitioner was given written notice on July 11, 2007-well over 24 hours prior to his appearance before the DHO on July 19, 2007. See Answer, Attachment 5, DHO File 1619034 at 1. The hearing was conducted by DHO, Marc Renda, an impartial hearing officer. Id. at 3. Petitioner waived his right to call witnesses and to a staff representative. Id. at 1, 11. Petitioner appeared at the hearing and was provided the opportunity to submit evidence and make statements. Id. at 1. Lastly, Petitioner was provided a written statement of the evidence used against him and the reasons for the sanctions imposed. Id. at 3. Accordingly, Petitioner was provided with all of the procedural safeguards required by Wolff.

In addition, there is clearly some evidence to support the DHO's findings. In the incident report, Officer Compton stated:

> On July 11, 2007, at 1:55 p.m., I monitored a completed inmate telephone call made on the telephone account of inmate James Gary, #09112-045, on July 09, 2007, at 10:45 a.m., to telephone number [redacted], from inmate telephone station 7208 in Unit D-1. During this telephone call to a female identified as [redacted], inmate Gary's [redacted], they become engaged in a heated conversation concerning her desire for inmate Gary to stop calling her. Inmate Gary became very agitated, and at approximately the nine minute mark he states, "There's no law. I'm doing it myself. I'm coming home. When I come home I"ll take him (her boyfriend) out of the picture. He'll be gone off the face of the earth. That's it, and if your mom and dad get in the way they will be gone too. End of question. If I go to jail for life, then I go to jail for life. Period. No if, ands or buts. If you get in the way you will be gone too. There's no questions about what I'm going to do." Inmate Gary utilized the inmate telephone system to make threats to the safety of other individuals.

Id. at 5.

Petitioner was asked whether the report was true, and he responded, "Yes, what can I say." When asked why he threatened his [the individual], Petitioner said because they "were in a heated argument." When asked why he threatened the mother and father, he said "because they have [her boyfriend] working for them." Petitioner further stated, "It was just a [sic] argument, there was no real threat to any one here. I am not threatening the security of the institution. I don't understand what the big deal is." Id. at 6. Thus, it is clear that Petitioner violated Code 197 by threatening another person with bodily harm, and his due process rights were not violated.

Indeed, Petitioner did not contest his guilt before the DHO, nor does he do so now.  Accordingly, Petitioner's claim is without merit.

        B.      Incident Report 1647130

On September 21, 2007, Officer J. Suchecki, Correctional Officer, completed an incident report charging Petitioner with a violation of Code 297-Use of a Telephone for Abuses Other Than Criminal, and Code 328-Giving/Receiving Money or Anything of Value to/from Another Inmate.  See Answer, Attachment 7, DHO File 1647130 at 6.

Petitioner's was again afforded each of the procedural due process requirements set forth in Wolff.  Petitioner received the copy of the incident report on September 21, 2007 from Lieutenant L. Maines.  The hearing was conducted by the UDC on September 25, 2007.  Id. at 6.  The UDC referred the incident report to be heard by the DHO.  Id. at 8.  Petitioner signed a form indicating that he had been advised of his rights, and did not request a Staff Representative or wish to call any witnesses.  Id. at 11-12.

The DHO held a hearing on September 27, 2007, and Petitioner was given the opportunity to submit evidence and make a statement.  Id. at 1.  After considering all of the evidence, including the reporter officer's statement, Petitioner's statement, and printouts reflecting that the telephone number Petitioner called had been added to inmate Hall's account on August 21, 2007-just two days prior to the telephone call at issue, the DHO concluded that Petitioner committed the violations of Codes 297-Use of the telephone for abuses other than criminal activity, and 328-Giving money or anything of value to, or accepting money or anything of value from another person.  Id. at 3.  Petitioner was provided a written copy of the evidence used against him, and the reasons for the sanctions imposed.  Id. at 4.

For the Code 297 violation, Petitioner lost telephone privileges for five years and 30 days of disciplinary segregation-suspended for 180 days clear conduct.  Petitioner was also disallowed 27 days of GCT pursuant to 28 C.F.R. § 541.13, Table 3, High Category, Sanction B.1.  Id.  He also forfeited 25 days of NVGCT pursuant to 28 C.F.R. § 541.13, Table 3, High Category, Sanction B (DHO may forfeit up to 50%, or up to 60 days NVGCT).  As of November 14, 2006, Petitioner had 203 days of NVGCT available to forfeit.  See Attachment 6, Sentence Monitoring

7

1  Good Time Data. After 60 days were forfeited on July 19, 2007, for incident report 1619034-143

2  days of NVGCT remained to forfeit. Because 50% of 143 is more than 60, the DHO was not

3  allowed to forfeit more than 60 days, and his decision to forfeit 25 days was proper.

4       With respect to the Code 328 violation, Petitioner lost commissary privileges for six

5  months, and received 15 days disciplinary segregation-suspended for 180 days clear conduct.

6  See Attachment 7, DHO File 1647130 at 3.

7       There is some evidence to support the DHO's findings. The report was based on Officer

8  Suchecki's statement:

9  > On September 21, 2007, at 9:35 a.m., I monitored a completed telephone call made on the account of inmate Hall, [Robert], #15506-045, on August 23, 2007, at 5:08 p.m., to telephone 1. During this telephone call to a female the inmate asks if his mother is there. The female tells him no she is not home. The inmate tells the female to write this name down (Hall, Robert), and this number (15506-045), and to put $20-$25 into that account. I also recognized the content of the conversation to match that of a telephone call made by inmate Gary on July 9, 2007, at 9:18 p.m., to the same telephone number. The telephone number [redacted] was placed on inmate Hall's account on August 21, 2007. Inmate Gary was placed on a 5 year phone restriction on July 19, 2007, which expires July 19, 2012.

15 Id. at 6.

16 Petitioner told Lieutenant Maines, "Yes, I used his phone, and I had him put the numbers on his

17 list. He dials the phone then gives it to me." Id. at 7. At the hearing, Petitioner did not submit

18 any documentary evidence, but he made the following statement:

19 > "The whole time he ... Mr. Compton knew." When further questioned by the DHO Gary admitted being on telephone restriction and utilizing the other inmates [sic] telephone account (ITS). Gary admitted sending money to Hall's telephone account and stated "he has no money." He stated "we know the same people on the outside," "he did me a favor by letting me talk and I did him a favor by sending him money."

22
23 Id. at 1-2. In addition, telephone records indicated that the telephone number Petitioner called

24 had been added to inmate Hall's account on August 21, 2007-just two days before Petitioner

25 made this call. Id. at 2. In light of these circumstances, there is some evidence that Petitioner

26 both circumvented the telephone monitoring procedures by using another inmate's account-in

27 violation of Code 297, and gave money to another inmate without authorization-in violation of

28

8

1  Code 328.  Petitioner fails to present any evidence in support of his innocence, and his due
2  process rights were not violated.

   C.  Incident Report 1793099

   On October 26, 2008 (approximately 14 months after the previous violation), Officer B. Kilgore, wrote an incident report charging Petitioner with a violation of Code 297-Use of the Telephone for Abuses Other Than Criminal.  See Attachment 8, DHO File 1793099 at 9.

   Petitioner was provided all of the process due under Wolff.  Petitioner received a copy of the incident report on October 26, 2008 from Lieutenant J. Baker-who was assigned to investigate the incident.  Id. at 9-10.  Petitioner refused to make a statement.  Id. at 10.  The UDC convened on October 30, 2008.  Id. at 9.  BOP policy indicates that the UDC hearing will "ordinarily" be conducted within three days, not including "the day staff become aware of the inmate's involvement, weekends, and holidays."  Program Statement (P.S.) 5270.07, Inmate Discipline and Special Housing Units, Chapter 2, Page 3.[1]  Extensions of time are authorized.  See Id. at Chapter 6, Page 5; see also 28 C.F.R. § 541.15(K).  In this instance, staff advised Petitioner there was a one-day delay due to insufficient staff to complete his UDC hearing sooner.  Attachment 8, DHO File 1793099 at 5.  On November 7, 2008, the DHO held a hearing regarding incident report 1793099.  Id. at 1.  Petitioner appeared before the DHO, and had the opportunity to make a statement and present documentary evidence.  Id.  Petitioner was advised of his rights but refused to sign the form.  Id. at 7-8.  Although Petitioner did not request a staff representative or wish to present witnesses, he again refused to sign the form.  Id. at 6.  Lastly, Petitioner was provided a written statement of the evidence used against him, and the reason for the sanctions imposed.  Id. at 4.  Accordingly, Petitioner was provided all the process required under Wolff.

   Moreover, some evidence supports the DHO's finding that Petitioner committed a violation of Code 297-Phone Abuse.  Code 297 specifically prohibits:

---

[1] The Court takes judicial notice of the copy of P.S. 5270.07 available at www.bop.gov. pursuant to Rule 201 of the Federal Rules of Evidence.

9

> Use of Telephone for abuses other than criminal activity (e.g. circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third party billing; using credit card numbers to place telephone calls, conference calling; talking in code)

28 C.F.R. § 541.13, Table 5.

In this instance, Officer Kilgore provided the following factual basis for the violation:

> On October 25, 2008, at approximately 9:19 p.m., I monitored a telephone call placed from the F Unit phone station 6044-LEE-F-A, beginning at 9:19 p.m., and using the Phone Access Code (PAC) provided exclusively to inmate CAIN, Ralph, W., Reg. No. 10672-032. This call was placed to [redacted], and lasted about four minutes. During their conversation the inmate placing the call told the called party, "I have to pay to use it, when I get on the phone, so, half the money you sent me I didn't get, you know what I mean, 'cause it don't belong to me." I contacted the F Unit Officer who positively identified inmate Gary, James L, Reg. No. 09112-045, as making this call while he was still using the phone. Gary's phone privileges are currently suspended. Inmates are prohibited from using another inmate's PAC to place phone calls, and are prohibited from using the phone while their own privileges are suspended.

Id. at 7, 9.

At the UDC hearing, Petitioner stated "I'm guilty. I took his number without his knowing. He had nothing to do with it." Id. at 9. Petitioner did not submit any documentary evidence, but stated the incident report was true. Id. The DHO considered Petitioner's statement, the reporting officer's statements, and a memorandum by Correctional Officer J. Seagraveas, which stated:

> On [October 25, 2008] at 9:25 pm, I was contacted by SIS that an inmate was using the phone under a different pin number. I approached the inmate who identified himself as Inmate Gary #09112-045. I reported back to SIS which inmate was using the phone.

Id. at 11. The DHO concluded that Petitioner committed a violation of Code 297. Id. at 3.

Petitioner was sanctioned with a loss of telephone privileges for 18 months, loss of commissary privileges for 180 days, and 45 days in disciplinary segregation-suspended for 180 days clear conduct. Id. Petitioner also lost 27 days of GCT pursuant to 28 C.F.R. § 541.13, Table 3, High Category, Sanction B.1. Id. He also forfeited 88 days of NVGCT. Id. Although this exceeds the standard sanction authorized by section 541.13, it was properly based on the repetitive violation of the same code within a 18 month period under 28 C.F.R. § 541.13, Table

5-authorizing forfeiture of 75%, up to 90 days, of NVGCT. As of November 14, 2007, Petitioner had 118 days of NVGCT available to forfeit, and 75% of 118 is 88 days. Accordingly, this sanction was properly imposed by the DHO. Based upon this evidence, there is clearly some evidence to support the DHO's findings that Petitioner was "circumventing telephone monitoring procedures by using another inmate's [Phone Access Code (PAC) to place calls. . . ." Id. at 3.

VI.   The DHO Properly Forfeited Petitioner's Non-vested Good Conduct Time

On April 26, 1996, section 18 U.S.C. § 3624(b) was amended to its current form by the Prison Litigation Reform Act (PLRA).[2] Petitioner's sentences took place after April 26, 1996, and federal regulations therefore allow the DHO to forfeit his NVGCT as a sanction for a high level offense. The PLRA statute requires "exemplary compliance" with prison rules for GCT. 18 U.S.C. § 3624(b)(1); see also Amendment to Original Petition at 12( BOP training aid setting forth timeline of sentencing laws). In addition, unlike SRA inmates, section 3624 was amended so that GCT awarded to PLRA inmates does not vest until "the date the prisoner is released from custody." 18 U.S.C. § 3624(b)(2). Therefore, since GCT for PLRA inmates does not vest at the end of the year it is awarded, it is now subject to be taken by BOP as a sanction for a prison disciplinary action.

---

[2] Section 3624(b) was initially enacted by the Sentence Reform Act (SRA). The SRA is part of the Comprehensive Crime Control Act of 1984 (CCCA) which was enacted into law on October 12, 1984, and became effective on November 1, 1987. The CCCA repealed previous good time statutes (18 U.S.C. § 4161, allowing the award of Statutory Good Time (SGT), and § 4162, allowing the award of Extra Good Time (EGT)), and enacted 18 U.S.C. § 3624(b). If an inmate was convicted of a crime committed between November 1, 1987, and September 12, 1994 (SRA inmate), "unless the Bureau of Prisons determines, that, during that year, he has not satisfactorily complied with such institutional disciplinary regulations. . . ." 18 U.S.C. § 3624(b) (1987); see also 28 C.F.R. 523.20(a) ("For inmates serving a sentence for offenses committed on or after November 1, 1987, but before September 13, 1994, the Bureau will award 54 days credit toward service of sentence (good conduct time credit) for each year served"). Pursuant to the SRA, GCT earned each year was vested at the end of that year and could not be disallowed in following years. See 18 U.S.C. § 3624(b) (1987).

Thereafter, on September 13, 1994, 18 U.S.C. § 3624(b) was amended as a result of the enactment of the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"). The GCT of federal inmates convicted of crimes committed on or after September 13, 1994, but before April 26, 1996, is governed by this version of the statute, which required "exemplary compliance" with prison rules by all inmates convicted of a "crime of violence." 18 U.S.C. § 3624(b)(1). In addition, under the VCCLEA, an inmate's GCT does not vest "unless the prisoner has earned or is making satisfactory progress toward a high school diploma." 18 U.S.C. § 3624(b)(2) (1995); see also 28 C.F.R. § 423.20(b)(2009) (For inmates serving a sentence for offenses committed on or after September 13, 1994, but before April 26, 1996, all yearly awards of good conduct time will vest for inmates who have earned, or are making satisfactory progress . . . toward earning a General Educational Development (GED) credential").

On September 26, 1997, 28 C.F.R. § 541.13-Prohibited Acts and Disciplinary Severity Scale, was modified by 62 FR 50787-01 (1997). This rule modified the way federal inmates lose good time credits, taking into account the changes in the law reflected by the VCCLEA-exemplary compliance and the PLRA-changes to NVGCT. Id. at 50787-88.

Section 542.12(a)(2) provides that if an inmate found guilty of a high category offense, the DHO "shall impose and execute one or more of sanctions A through M [in Table 3]." Thus, Sanction B is obviously included within this section and allows the forfeiture of NVGCT for VCCLEA and PLRA inmates. See 28 C.F.R. § 541.13, Table 3, High Category, Sanction B (2007). The DHO may "Forfeit . . . non-vested good conduct time up to 50% or up to 60 days, whichever is less. . . ." Id. Moreover, Sanction B.1 is mandatory and requires disallowance of GCT to be imposed on PLRA inmates. 28 C.F.R. § 541.13(a)(2). Therefore, because Petitioner was convicted of a crime on or after April 26, 1996, the DHO may take GCT either mandatorily (disallowance of GCT, pursuant to sanction B.1) or discretionary (forfeiture of NVGCT, pursuant to sanction B).

Petitioner contends that because his crime was committed after November 1, 1987, the DHO may not forfeit NVGCT. In support of his argument Petitioner cites the following:

> Sanctions B and F of the Prohibited Acts and Disciplinary Severity Scale, pertain to statutory good time [SGT] and do not apply to inmates committed under the Sentencing Reform Act [SRA] provisions of the Comprehensive Crime Control Act [CCCA]. This means that inmates who committed their crimes on or after November 1, 1987 and who are sentenced under the [SRA] provisions of the [CCCA] are only eligible to receive 54 days per year of good conduct [GCT] (18 U.S.C. § 3624(b)). This credit is given at the end of each year of time served and, once given, is vested.

P.S. 5270.07, Chapter 4, Appendix, Page 1.

Contrary to Petitioner's claim, at the time the SRA took effect on November 1, 1987, BOP regulations did not account for the disallowance of GCT under section 3624(b), only SGT and EGT could be forfeited. This was later amended such that Sanction B did not apply to inmate convicted under the SRA, because they did not earn SGT or EGT. P.S. 5270.07, Chapter 4, Appendix. The DHO could only take good time credits from these SRA inmates by

12

disallowing GCT from the current year that had not yet been awarded. Id.

As previously stated, in 1997, Chapter 4 of the P.S. was revised to reflect the changes imposed by the VCCLEA and the PLRA. See P.S. 5370.07, Change Notice 08. The amendment clearly reflected that under Sanction B "non-vested good conduct time," may be forfeited by the DHO. Id. The entire portion of the text cited by Petitioner sets forth the limitations of Sanction B stating:

> This Sanction B does not apply to inmate committed under the provisions of the [CCCA] for crimes committed on or after November 1, 1987 and prior to passage of the Violent Crime Control and Law Enforcement Act of 1994 (September 23, 1994). For those inmates, the applicable sanction is B.1.

P.S. 5270.07 at Chapter 4, Pgs. 16-17. Therefore, Sanction B does not apply to inmates who were sentenced for crimes committed after November 1, 1987, and prior to September 23, 1994. In sum, because each of Petitioner's convictions of which he is currently serving an aggregate term of imprisonment were for offenses committed after April 26, 1996. Answer, Attachment 1, Judgment and Commitment Orders. His GCT is therefore governed by the current, PLRA version of section 3624(c), and current version of 28 C.F.R. §541.13. Accordingly, there is no merit to Petitioner's claim and it must be denied.

VII.     Imposition of Enhanced Sanctions for Incident Report 1793099

Petitioner contends that the amount of NVGCT forfeited for incident report 1793099 exceeded the amount authorized by the applicable regulations. More specifically, Petitioner claims that his previous violation of Code 297, from incident report 1647130, occurred more than 12 months prior to this violation, and the sanctions under section 541.13 are not applicable. Petitioner is mistaken.

If a PLRA inmate committed the same offense within a short period of time, the DHO may increase the sanctions imposed on the inmate. Under Sanction B.1, an increase of disallowance of GCT is only authorized for "a greatly aggravated offense or where there is a repetitive violation of the same prohibited act that occurs within a relatively short time frame (e.g., . . . within 12 months for the same high severity prohibited act. . . .)" 28 C.F.R. § 541.13, Table 4(1)(b.1) (I).

The amount of NVGCT forfeited may also be increased under Sanction B.  28 C.F.R. § 541.13(e); see also 28 C.F.R. § 541.13, Table 5.  Under Table 5, if the inmate has a prior offense for the same high category code violation within the past 18 months, the amount of NVGCT forfeited may be increased up to 75% or up to 90 days, whichever is less. . . ."

Therefore, if the inmate suffers a repetitive high category offense within a 12 months period, the DHO may increase both the amount of GCT disallowed and NVGCT forfeited.  If the repetitive offense is committed within a 18 month period, the DHO may increase the amount of NVGCT which is forfeited, but not the amount of GCT disallowed under Sanction B.1.

In this instance Petitioner first committed a violation of Code 297-Phone Abuse, on August 23, 2007, and then again on October 25, 2008.  Answer, Attachment 7, DHO File 1647130 and 1793099.  Because the violations did not place within a 12 month period, the DHO could not increase the amount of GCT disallowed, however, it was within a 18 month period, and the DHO was allowed to increase the forfeiture of NVGCT from 50% up to 60 days, to 75% or up to 90 days.  28 C.F.R. § 541.13, Table 5.  Therefore, the DHO's sanction of 75% of the available NVGCT was proper, and Petitioner's claim to the contrary is without merit.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.     The instant petition for writ of habeas corpus is DENIED; and

2.     The Clerk of Court is directed to enter judgment in favor of Respondent.

IT IS SO ORDERED.

Dated:   **April 20, 2010**            /s/ Dennis L. Beck
                                       UNITED STATES MAGISTRATE JUDGE